# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | |
|---|---|
| VIVIAN R. CHESTNUT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CIVIL ACTION NO. 2:10-0062-KD-B |
| ) | |
| SELMA CITY BOARD OF EDUCATION, ) | |
| and AUSTIN N. OBASOHAN, ) | |
| Superintendent, ) | |
| ) | |
| Defendants ) | |

## ORDER

This action is before the Court on the motion for summary judgment and evidence in support filed by defendants Selma City Board of Education and Superintendent Austin N. Obasohan (docs. 22, 23), plaintiff Vivian R. Chestnut's response in opposition and evidence in support (doc. 27), and defendants' reply (doc. 28). Upon consideration, and for the reasons set forth herein, the motion for summary judgment is **GRANTED**.

I. Background

Plaintiff Vivian R. Chestnut (Chestnut) was employed as an Academic Coach by the Selma City School Board (the Board). Austin N. Obasohan (Obasohan) was superintendent during the relevant time period. In March 2009, two vacancies for elementary school principal positions were advertised by the Board. Chestnut was not hired for either position.

Chestnut filed a charge with the Equal Employment Opportunity Commission wherein she alleged the Board discriminated against her on the basis of her sex when it failed to hire her as a principal. Chestnut received notice of her right to sue and filed this action against the Board

1

and Obasohan. Chestnut brings two counts alleging sex discrimination pursuant to Title VII of the Civil Rights Act, as amended, and 42 U.S.C. § 1981.

II. Findings of Fact

    1). Two principal positions were advertised by the Board in March 2009 and the "minimum requirements" were

        1. Master's Degree in Educational Administration.

        2. Experience in School Administration.

        3. Relevant State Certification Bachelor's degree or equivalency.

        4. Must meet background clearance requirements as specified in Alabama Statutes and State Board of Education regulations.

(doc. 25-2; Ex. B, notice of position; doc. 27, p. 2, Chestnut's statement of facts). The start date was July 1, 2009 (doc. 27, p. 2, Chestnut's statement of facts). The principal positions were filled in June 2009 (doc. 25-17, Ex. Q, Affidavit of Sarah Justiss, Teacher Certification Coordinator, Alabama State Department of Education, p. 3).

    2). In March 2009, James Pope, a male, sent a letter of interest for these positions (doc. 27-5, Ex. E). At that time Pope held a certification in Educational Administration issued by the State of Alabama (doc. 25-12, Ex. L, Pope deposition, p. 9-10). Pope's certification issued November 10, 2008, was valid effective July 1, 2008, and will expire June 30, 2013. (doc. 25-19, Ex. S, Pope certification, p. 3).

    3). In March 2009, Aubrey Larkin, a male, sent a letter of interest for these positions (doc. 27-5, Ex. D). At that time Larkin held a certificate in Educational Administration issued by the State of Alabama (doc. 25-14, Ex. N, Larkin deposition, p. 8). Larkin's certification issued February 27, 2009, was valid effective July 1, 2008, and will expire June 30, 2013 (doc. 25-19, Ex. S, Larkin certification, p. 2).

2

4).  In March 2009, Chestnut sent a letter of interest for these positions (doc. 27-2, Ex. B).  At that time Chestnut did not hold a certificate in Educational Administration issued by the State of Alabama because she had not yet taken the examination to obtain the certification (doc. 25-17, Ex. Q, Affidavit of Sarah Justiss, Teacher Certification Coordinator, Alabama State Department of Education).  Chestnut took the examination in late July 2009 and her certification issued October 2, 2009 (id.). Chestnut's certificate was valid effective July 1, 2009, and will expire June 30, 2014 (id., p. 5, Exhibit A, Chestnut's Professional Educator Certificate). Chestnut was issued certification to teach elementary grades one through six on April 22, 2009 and this certificate was valid effective July 1, 2009, and will expire June 30, 2014 (id.).  Chestnut held a mid-management certification in administration from Texas A & M University (doc. 27-3, Ex. C, Chestnut resume, p. 1).

5).  Chestnut's experience in school administration consisted of serving as an assistant principal in Texas and as an Academic Coach (doc. 27-3, Ex. C, Chestnut resume, p. 1).

6).  Pope's experience in school administration consisted of serving as fill-in administrator for ten years in the Demopolis City School System  (doc. 25-12, Ex. L, Pope deposition, p. 8-9).

7).  Larkin's experience in school administration consisted of serving as an informal assistant principal in the absence of the principal and he performed other administrative duties (doc. 25-14, Ex. N, Larkin deposition, p. 26).

8).  The Board believed that Chestnut met the minimum qualifications for the principal positions (doc. 27-8, Ex. H, Board's response to Chestnut's EEOC charge, "Claimant met the minimum qualifications for both positions").

9).  Initially, after Obasohan received the applications of other applicants and the letters

of interest, he requested that each school select a five-member committee.  Then a committee of ten members was convened to interview and score the applicants based on a series of questions (doc. 25-1, Ex. A, Obasohan deposition, p. 9, 11-12).  The respective school committees were composed of educational professionals or other interested persons selected by each school (doc. 25-1, Ex. A, Obasohan deposition, p. 9, 11-12; doc. 25-3, Ex. C, Affidavit of Luekisha Jackson at ¶3; doc. 25-4, Ex. D, Affidavit of Cheryl Kish at ¶3; doc. 25-5, Ex. E, Affidavit of Alesia Williams at ¶3; doc. 25-6, Ex. F, Affidavit of Leigh Chappelle at ¶3; doc. 25-7, Ex. G, Affidavit of Joselyn Reddick at ¶3; doc. 25-8, Ex. H, Michael Bowers deposition, p. 9-12); doc. 25-9, Ex. I, Juanita Tripp deposition,  p. 8-9).

10).  The process had two parts – <u>scoring</u> and <u>ranking</u>.  First, the ten-member committee met, interviewed, and <u>scored</u> the applicants. The committee then submitted the names of the top five applicants to Obasohan for further consideration. The top five – in the order presented - were Larkin, a male; Chestnut, a female; Taurus Smith, a female; Brenda Mitchell, a female, and Pope, a male (doc. 25-1, Ex. A, Obasohan deposition, p. 26-27; doc. 25-3, Ex. C, Jackson Affidavit at ¶3, 6; doc. 25-4, Ex. D, Kish Affidavit at ¶3, 6; doc. 25-5, Ex. E, Williams Affidavit at ¶3, 6;  doc. 25-6, Ex. F, Chappelle Affidavit at ¶3,6; doc. 25-7, Ex. G, Reddick Affidavit at ¶3 ,6;  doc. 25-8, Ex. H, Bowers deposition, p. 9-12, 18).  After receiving the scores, Obasohan and the special education director interviewed these applicants.  Obasohan then asked each five-member school committee to <u>rank</u> the applicants from first to last choice for their principal position (doc. 25-1, Ex. A, Obasohan deposition, p. 12, 29-30; doc. 25-3, Ex. C, Jackson Affidavit  at ¶8; doc. 25-4, Ex. D, Kish Affidavit at ¶8; doc. 25-5, Ex. E, Williams Affidavit at ¶8; doc. 25-6, Ex. F, Chappelle Affidavit at ¶8;  doc. 25-7, Ex. G, Reddick Affidavit at ¶8; and doc. 25-8, Bowers deposition, p. 12-13).   As to ranking, the committee members were "given a

4

list of individuals to rate again how we felt they would work with our school and our culture." (doc. 25-8, Bowers deposition, p. 20).

10). The committee for Knox Elementary School ranked Pope as their first choice, Larkin as their second choice, and Taurus Smith as their third choice. The committee did not rank a fourth or fifth choice; thus, Chestnut was not a choice for Knox (doc. 25-10, Ex. J).

11). The committee for Clark Elementary School ranked Larkin as their first choice; Taurus Smith, a female, as their second choice; James Pope, a male, as their third choice; Brenda Mitchell, a female, as their fourth choice; and Chestnut as their fifth choice. (doc. 25-11, Ex. K).

12). Obasohan concurred with the Knox and Clark committees' first candidates and made the recommendation to the Board for final hiring approval (doc. 25-1, Ex. A, Obasohan deposition, p. 9-10).

13) Several committee members gave their respective opinions as to why Pope or Larkin were appropriate candidates for their respective schools, why Chestnut was not an appropriate fit, and stated that gender was not a part of the decision-making process in ranking their candidates. (Doc. 25-3, Ex. C, Jackson Affidavit at ¶11; doc. 25-4, Ex. D, Kish Affidavit at ¶ 11; doc. 25-5, Ex. E, Williams Affidavit at ¶9, 12; doc. 25-6, Ex. F, Chappelle Affidavit at ¶9,12).

14) Obasohan and former Knox Elementary Principal Reddick who participated in the process but did not vote, both stated that gender was not a part of the decision-making process (doc. 25-7, Ex. G, Reddick Affidavit at ¶ 4, 9; doc. 25-1, Ex. A, Obasohan deposition, p. 30).

15). As evidence of the Board's sex-based discrimination against her, Chestnut states that she met each of the minimum qualifications but Larkin and Pope did not meet the minimum qualifications (doc. 27, p. 3, Chestnut statement of facts).

III. Summary Judgment Standard

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If a party asserts "that a fact cannot be or is genuinely disputed", the party must

> (A) cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1)(A)(B).

The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991) quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986).

Once the moving party has satisfied its responsibility, the burden shifts to the nonmovant to show the existence of a genuine issue of material fact. Id. "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determination of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 999 (11th Cir. 1992) citing Anderson v. Liberty Lobby,

477 U.S. 242, 255, 106 S.Ct. 2505 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-159, 90 S.Ct. 1598, 1608-1609 (1970). "If the nonmoving party fails to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof, the moving party is entitled to summary judgment." Clark, 929 F.2d at quoting Celotex Corp., 477 U.S. at 323, 106 S. Ct. at 2553 (footnote omitted) (internal quotations omitted).

Overall, the Court must "resolve all issues of material fact in favor of the [non-movant], and then determine the legal question of whether the [movant] is entitled to judgment as a matter of law under that version of the facts." McDowell v. Brown, 392 F.3d 1283, 1288 (11th Cir. 2004) citing Durruthy v. Pastor, 351 F.3d 1080, 1084 (11th Cir. 2003).

However, the mere existence of any factual dispute will not automatically necessitate denial of a motion for summary judgment; rather, only factual disputes that are material preclude entry of summary judgment. Lofton v. Secretary of Dept. of Children and Family Services, 358 F.3d 804, 809 (11th Cir. 2004). "An issue of fact is material if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. It is genuine if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." Reeves v. C.H. Robinson Worldwide, Inc., 594 F.3d 798, 807 (11th Cir. 2010) (citation omitted). Also, "what is considered to be 'facts' at the summary judgment stage may not turn out to be the actual facts if the case goes to trial, but those are the facts at this stage of the proceeding for summary judgment purposes." Cottrell v. Caldwell, 85 F.3d 1480, 1486 (11th Cir. 1996).

IV. Conclusions of law and analysis

A) Chestnut's claims under 42 U.S.C. § 1981.

Chestnut brings her complaint, in part, pursuant to 42 U.S.C. § 1981 (doc. 5). However, in the motion for summary judgment, the Board and Obasohan argue that any claim pursuant to §

1981 is due to be dismissed because Chestnut did not allege race discrimination which is a necessary prerequisite to a claim under § 1981 (doc. 23, p. 22). Chestnut concedes that there is no issue of race discrimination (doc. 27, p. 4).

The Eleventh Circuit has recognized that 42 U.S.C. § 1981, "unlike Title VII, is directed exclusively toward racial discrimination and, as a result, the plaintiff's claim must allege discrimination due to race." Tucker v. Talladega City Schools, 171 Fed.Appx. 289, 295 (11th Cir. 2006). Because Chestnut did not allege race discrimination, and so concedes, summary judgment is granted in favor of the Board and Obasohan as to Chestnut's claims under 42 U.S.C. § 1981.

B) Chestnut's claims against Obasohan under Title VII

Chestnut brings her claim under Title VII against Obasohan as Superintendent. However, in the motion for summary judgment, the Board argues that the claims against Obasohan are due to be dismissed because he is not the "employer" and there is no individual liability under Title VII (doc. 23, p. 2, n.1). Chestnut concedes "that Title VII is directed against the employer only." (doc. 27, p. 4).

The Eleventh Circuit has held "that relief under Title VII is available only against the employer and not against individual employees"[.] Dearth v. Collins, 441 F.3d 931, 933 (11th Cir. 2006); Albra v. Advan, Inc., 490 F.3d 826, 832 (11th Cir. 2007) ("this court has long held that individuals are not amenable to private suit under Title VII"); Hinson v. Clinch County Bd. of Educ., 231 F.3d 821, 827 (11th Cir. 2000); Busby v. City of Orlando, 931 F.2d 764, 772 (11th Cir. 1991) (finding as a matter of law that individual capacity suits under Title VII are not cognizable). Because Chestnut cannot prevail on a claim against Obasohan under Title VII, and so concedes, summary judgment is granted in favor of Obasohan as to Chestnut's claims under

Title VII claims against him.

### C. Chestnut's Title VII claim of intentional sex discrimination against the Board

Title VII of the Civil Rights Act of 1964, as amended, makes it an unlawful employment practice for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). "A plaintiff may prove a claim of intentional discrimination [under Title VII] through direct evidence, circumstantial evidence, or through statistical proof." Rioux v. City of Atlanta, Ga., 520 F.3d 1269, 1274 (11th Cir. 2008).

Chestnut does not argue that she has direct evidence of discrimination or statistical proof. Therefore, the burden shifting analysis of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) applies and Chestnut must prove her discrimination claim by circumstantial evidence. In that regard, the Eleventh Circuit has explained as follows:

> We evaluate such claims using the framework established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and Texas Dep't. of Community Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). [Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1087 (11th Cir. 2004)]. Under that framework the plaintiff must first establish a prima facie case of discrimination, typically by showing that she was a qualified member of a protected class and was subjected to an adverse employment action in contrast to similarly situated employees outside the protected class. See id. The methods of presenting a prima facie case are flexible and depend on the particular situation. Id.
>
> Once the plaintiff has made a prima facie case, a rebuttable presumption arises that the employer has acted illegally. Id. The employer can rebut that presumption by articulating one or more legitimate non-discriminatory reasons for its action. Id. If it does so, the burden shifts back to the plaintiff to produce evidence that the employer's proffered reasons are a pretext for discrimination. Id. Despite these shifts in the burden of production, the ultimate burden of persuasion remains on

the plaintiff to show that the defendant intentionally discriminated against her. Burdine, 450 U.S. at 253, 101 S.Ct. at 1093; Wilson, 376 F.3d at 1088.

Alvarez v. Royal Atlantic Developers, Inc., 610 F.3d 1253, 1264 -1265 (11th Cir. 2010)

Once the burden shifts to Chestnut to show that the Board's "legitimate non-discriminatory reasons for its actions" are a pretext for discrimination, she must show that

> . . . the employer's proffered reasons were "a coverup for a ... discriminatory decision." Rojas v. Florida, 285 F.3d 1339, 1342 (11th Cir.2002) (internal quotation marks omitted). The court must evaluate whether the plaintiff has demonstrated "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." Combs v. Plantation Patterns, Meadowcraft, Inc., 106 F.3d 1519, 1538 (11th Cir.1997) (quoting Sheridan v. E.I. DuPont De Nemourst & Co., 100 F.3d 1061, 1071 (3rd Cir.1996) (en banc)). If the defendant's legitimate non-discriminatory reason is one that might motivate a reasonable employer, "a plaintiff cannot recast the reason but must meet it head on and rebut it." Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1088 (11th Cir.2004).

Cody v. Palmyra Park Hosp. Inc., 2010 WL 3862869, 2 (11th Cir. Oct. 5, 2010) (unpublished opinion).

1) Prima facie case

The Board argues that Chestnut cannot establish a prima facie case of discrimination because she was not minimally qualified for the principal positions at the time the hiring decision was made. The Board argues that Chestnut did not hold the "relevant state certification", i.e., a certificate of educational administration, or comparable certification, issued by the State of Alabama. The Board argues that despite the fact that it was unaware that Chestnut did not have the relevant state certification, she did not have it, and thus could not have held the principal position had she been selected. The Board does not dispute that Chestnut was a member of a protected group, that she was not offered the position, and that a person outside of her protected group who was equally or less qualified was given the position (docs. 23, 28).

10

Chestnut does not argue that she was certified as an educational administrator by the State of Alabama. Instead, she argues that the "phrase relevant state certification is not defined and that the Code of Alabama § 16-[23]-1[1] requires only a certificate issued by the State and "does not speak to a specific area of certification" (doc. 27, p. 5). Chestnut also argues that "in any event defendant Obasohan thought she met each requirement as did the Board" (id.). She relies upon Obsohan's deposition testimony that all three candidates met the qualification and the Board's response to Chestnut's EEOC charge wherein it states that Chestnut met the minimum qualifications for both positions (id.; doc. 27, Ex. G, Obasohan deposition; Ex. H, response). Chestnut also argues that Pope and Larkin were less qualified because they did not have the requisite experience in school administration.

Regardless of the Board's mistaken belief that Chestnut met the minimum qualifications, because Chestnut can provide no evidence that she actually met the minimum qualifications for the principal positions, she cannot establish her prima facie case of discrimination. Although Chestnut argues that Ala. Code § 16-23-1 "does not speak to a specific area", i.e., does not state that a principal must have a specific type of certification, the State of Alabama Department of Education Subject and Personnel Codes explains that the "in-field requirements" for an elementary school principal are

> Superintendent-Principal Certificate, or
> Educational Administrator Certificate, or
> Instructional Leader Certificate, or
> Practicing Instructional Leader Certificate, or
> Principal Certificate (Grades P-6 or P-12), or Superintendent Certificate, or

---

[1] Title 16-23-1 sets forth as follows: " Certain public school employees must hold certificate. No person shall be employed in the public schools of the state as county superintendent of education, city superintendent of schools, assistant superintendent, supervisor, principal, teacher or attendance officer unless such person shall hold a certificate issued by the State Superintendent of Education." Ala. Code § 16-23-1.

> Interim Certificate endorsed as Educational Administrator, or Instructional Leader, or Preliminary Certificate endorsed as Educational Administrator or Instructional Leader, or Special Alternative Certificate endorsed as Instructional Leader

(doc. 25-17, Ex. Q, Justiss affidavit, Ex. B, p. 11-12).

Chestnut's Professional Educator Certificate indicates that she held a Class A, Elementary Grades 1-6 teaching certificate which was issued on April 22, 2009. Thus, at the time she sent her letter of interest for the principal position on March 5, 2009, she did not hold any valid Alabama certificate. Moreover, at the time the principal positions were filled in June 2009, her teaching certificate had been issued but she did not hold a valid Alabama certificate which would qualify her for the principal position (doc. 25-17, Ex. Q, Justiss affidavit, Ex. A). Therefore, Chestnut has not provided sufficient evidence to establish this element of her prima facie case. See Earley v. Champion Intern., Corp., 907 F.2d 1077, 1080 (11th Cir. 1990) ("Consideration of a summary judgment motion does not lessen the burdens on the non-moving party: the non-moving party still bears the burden of coming forward with sufficient evidence on each element that must be proved. . . . [I]f on any part of the prima facie case there would be insufficient evidence to require submission of the case to a jury, we must affirm the grant of summary judgment [for the defendant].") (citations omitted). Accordingly, summary judgment is granted in favor of the Board as to Chestnut's claim of sex discrimination under Title VII.

2) The Board's legitimate, non-discriminatory reasons

Assuming for argument that Chestnut made her prima facie case, the burden shifts to the Board to show a legitimate, non-discriminatory reason for its decision. The Board's "burden to articulate a non-discriminatory reason for an adverse employment action is a burden of production, not of persuasion." Cody, 2010 WL 3862869, 2 citing Burdine, 450 U.S. at 254, 101 S.Ct. at 1094. "The burden is 'exceedingly light.'" Id., quoting Perryman v. Johnson Prods.

Co., Inc., 698 F.2d 1138, 1142 (11th Cir.1983).

In that regard, the Board states that it selected Pope and Larkin because they were the first choice of the school committees, were qualified for the position, and because Obasohan thought it prudent to follow the schools' decisions as to whom would be the best fit (doc. 23, p. 25-26). The Board also states that Chestnut was "simply not a fit for either school – she was not either school's second choice" (id. p. 26). In support of its proffered legitimate, non-discriminatory reason, the Board points out that members of the school committees considered Larkin and Pope to have prior administrative experience and that some members explained why they selected Pope and Larkin and why they did not think Chestnut was a correct fit for their school (doc. 25-5, Ex. E, Williams Affidavit at ¶10, 11; doc. 25-6, Ex. F, Chappelle Affidavit at ¶10, 11; doc. 25-3, Ex. C, Jackson Affidavit at ¶9, 10, 11; doc. 25-4, Ex. D, Kish Affidavit at ¶9, 10; doc. 25-10, Ex. J, Knox Elementary rankings; doc. 25-11, Ex. K, Clark Elementary rankings).

The Board also points out that none of the affidavits by the committee members or the depositions of Obasohan or committee members Juanita Tripp[2] or Michael Bowers[3] yielded any

---

[2] Chestnut argues that Tripp thought the process was complete the day the scores were tallied - Larkin scored first and Chestnut scored second - and that Tripp testified that when former Principal Reddick later asked her to sign the rankings which differed from the scoring, she refused and never voted again (doc. 27, p. 8). A closer reading of Tripp's testimony shows that she participated in the scoring interviews, and that while she did not vote again and thought the process complete after the scoring, Reddick told Tripp that there would be a second meeting for the committee to rank its choices. Tripp could not attend because of work but later signed the ranking showing Pope as the first choice, Larkin as the second choice, and Taurus Smith as the third choice (doc. 27-13, Ex. M, Tripp deposition; doc. 25-10, Ex. J, rankings for Knox Elementary School signed by Juanita Tripp).

[3] Bowers testified that he was concerned that one applicant, Pope, had scored lower than other applicants including Chestnut, at the scoring stage, but was ultimately ranked above those in the ranking for Clark Elementary (doc. 27-12, Bowers deposition p. 17-19, 24). However, nothing in Bowers' testimony indicates that he thought Pope was ranked above Chestnut because
(Continued)

13

evidence that gender was a part of their decision-making process such that they selected Pope and Larkin first because they were male (doc. 25-1, Obasohan deposition; doc. 25-3, Ex. C, Jackson Affidavit ; doc. 25-4, Ex. D, Kish affidavit ; doc. 25-5, Ex. E, Williams affidavit; doc. 25-6, Ex. F, Chappelle affidavit; doc. 25-7, Ex. G, Reddick affidavit; doc. 25-8, Ex. H, Bowers deposition;  doc. 25-9, Ex. I, Tripp deposition).

The Board has sufficiently articulated legitimate, non-discriminatory reasons for its decision.  Therefore, the Court finds that the Board has met its light burden of production at this stage.  Smith v. Horner, 839 F.2d 1530, 1537 (11th Cir.1988).

3) Pretext

The "presumption of discrimination" having been "eliminated", the burden now shifts to Chestnut to establish that the Board's proffered reasons are a pretext for sexual discrimination against her. Chapman v. AI Transport, Inc., 229 F. 3d 1012, 1024-25 (11th Cir. 2000) (*en banc*); Jones v. Gerwens, 874 F.2d 1534 (11th Cir.1989) (the burden of proving the existence of intentional discrimination by a preponderance of the evidence remains on the plaintiff); Vessels v. Atlanta Indep. School Sys., 408 F.3d 763, 768 (11th Cir. 2005) (once the employer meets this burden, plaintiff must show, by a preponderance of the evidence, that the employer's reasons are a pretext for intentional discrimination.).  To do so, Chestnut must rebut the Board's proffered reasons but she must do more than substitute her opinion as to Larkin and Pope's qualifications, or as to who should have been hired, or "quarrel[] with the wisdom" of the Board's decision to follow the school committees' recommendations. Chapman, 229 F. 3d at 1024-25.   In making

---

he was male.  Instead, Bowers was simply concerned that an applicant who initially scored lower in the scoring phase of the process had moved ahead when the school committee ranked its choices.  Ultimately, Bowers ranked Pope his first choice and Chestnut his second choice, although he was aware that Pope scored lower (doc. 25-10, Ex. J).

14

this determination, the Court looks to whether Chestnut can demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." Combs, 106 F.3d at 1538. Chestnut must "be able to show both that [the Board's] proffered reason was false and that the true motive for the action was discriminatory. Thomas v. CVS/Pharmacy, 336 Fed. Appx. 913, 914 (11th Cir. 2009) citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515, 113 S.Ct. 2742, 2752, 125 L.Ed.2d 407 (1993).

To rebut as pretext the Board's proffered reason, that Larkin and Pope were qualified for the job, Chestnut argues that Larkin and Pope did not have administrative experience and thus were not qualified and therefore, the Board "contrived" the positions of "fill-in administrator" and "informal assistant principal" . . . "to fill a deficiency in the submissions of these two male candidates." (doc. 27, p. 6). Chestnut argues that these are not "known classifications in the education arena" (id., citing doc. 27-6, Ex. F, Subject and Personnel Codes, State of Alabama Department of Education). Chestnut also argues that the Board created the "position interim principal" as a pretext to give Pope and Larkin an opportunity to obtain the necessary administrative experience. (doc. 27, p. 4). In the statement of facts, Chestnut states that that "[e]ven though the posting was for principalship, at the interviews, without any additional postings, [the Board] changed the position previously advertised to those of interim principalship" and that this was a "pretext to allow Larkin and Pope to gain the required administrative experience to fulfill the requirements of a principalship." (doc. 27, p. 3, statement of facts). Chestnut does not cite to any evidence to support these facts. Chestnut later cites to Obasohan's deposition as support for her argument that the "actions of the Board not only allowed Larkin and Pope to obtain unadvertised interim principalships but unadvertised contract

15

principalships as well" (doc. 27, p. 10).

The Board responds that even though Chestnut argues that Pope and Larkin's prior experience was not "an official position", there is no evidence that their undisputed prior administrative experience, however described, was not sufficient for the school committees and the Board to make their decision. The Board also argues that even if mistakes were made, mistakes are not evidence of sex discrimination. The Board also responds that Chestnut incorrectly argues that the principal positions were "changed" or not advertised and that Pope and Larkin were both hired for one-year principal positions.

Chestnut must show more than just a mistake on the part of the Board in accepting the administrative experience and qualifications of Larkin and Pope, she must rebut the pretext and show that sex discrimination was the true reason why the Board made the decision to hire Pope and Larkin. Chestnut argues that since the "fill-in principal" and "interim principal" positions are not in the Personnel Codes, the committees, Obasohan and the Board erred by finding that Larkin and Pope had experience in administration. However, this argument is nothing more than quibbling with the wisdom of the Board's decision to credit the administrative experience offered by Larkin and Pope as sufficient to meet the requirements of the position. Chapman, 229 F.3d at 1029-1030 ("plaintiff is not allowed to recast an employer's proffered nondiscriminatory reasons or substitute his business judgment for that of the employer."). Chestnut offers no evidence from which a reasonable fact-finder could infer that that sex discrimination was the real reason for finding Pope and Larkin had adequate administrative experience for the positions.

Chestnut also argues that the Board created the "position interim principal" to give Pope and Larkin the "opportunity to gain the experience to fill the positions." (doc. 27, p. 4). However, Obasohan testified that the positions were probationary or interim principal positions

for which the probationary principal would be notified 90 days before the end of the one year contract if he or she would be terminated (doc. 23, p. 3). Obasohan also testified that as to at least one of the two schools, this was an interim position also because there was a question as to whether the school would remain open. Obasohan also testified that under Alabama law, all new principals - persons who have not served as principal at another school - are hired as probationary principals. Thus, this probationary period applies to all persons hired who have not previously served as principal, regardless of their gender. (doc. 25-1, Ex. A, Obasohan deposition, p. 25-26).

There is nothing implausible, inconsistent, incoherent or contradictory in Obasohan's testimony such that a reasonable factfinder could find the Board's reasons untruthful or "unworthy of credence." Combs, 106 F.3d at 1538. Chestnut has not presented any evidence which would create a genuine issue of material fact as to whether the positions were changed in some manner to intentionally discriminate against Chestnut on basis of sex. Therefore, Chestnut again fails to rebut as pretext the Board's legitimate non-discriminatory reasons for selecting Larkin and Pope over Chestnut.

Chestnut also argues that the Board's proffered reason – that Larkin and Pope were the first choice of the respective school committees- is a pretext for sex discrimination because the "appointment process itself was unlawful and established to place [her] at a disadvantage." (doc. 27, p. 6). In support, Chestnut argues that Obasohan unlawfully delegated his statutory responsibility to appoint principals to a "biased interview team." (id.). Chestnut argues that Obasohan's delegation to the interview team allowed two male candidates who were not minimally qualified to be selected above Chestnut who was more qualified. Chestnut argues that the activities of the "biased interview team" . . . "caused confusion, followed no specific

17

guidelines, allowed an unofficial caucus after the interview process was completed", and moved Pope ahead of her when he had initially scored lower and gave Larkin an advantage because he knew all ten of the interviewers.

By her reference to "unofficial caucus" and that the process was to "place [her] at a disadvantage", Chestnut appears to refer to the fact that after the scoring from the initial interviews – wherein Chestnut scored second - Obasohan sent the names of the top five applicants back to the respective school committees to rank them by choice for their school. Chestnut was not a choice for Knox Elementary and was the fifth choice for Clark Elementary.

The Board responds that Chestnut does not challenge the committee members' reasons as to why Chestnut "was not a fit for the schools" and their statements that their decisions were not based on her sex. The Board argues that even if the process was flawed, a flawed process is not evidence of sex discrimination and that Chestnut cannot substitute her judgment for how the application process should have been handled for that of the Board or Obasohan. The Board also argues that Obasohan had the authority to form a selection committee, a process frequently used by school boards and superintendents, and that he had the right to accept or reject the committees' recommendations. The Board further argues that even if all ten committee members were biased because they knew Larkin, that bias was not the result of sex discrimination but the result of the fact that they knew Larkin.

Again, Chestnut has failed to produce any evidence from which a reasonable fact-finder could infer that any part of the Board's decision to award the positions to Larkin and Pope was based on intentional sex discrimination. Chestnut cannot substitute her judgment or opinion for that of the Board as to what process would be employed to select the principals. Again, this argument is nothing more than quibbling with the wisdom of the Board's decision to appoint the

school committees' first choice for principal. Chapman, 229 F.3d at 1029-1030 ("plaintiff is not allowed to recast an employer's proffered nondiscriminatory reasons or substitute his business judgment for that of the employer."). Also, Chestnut presents no evidence that the candidates' sex had any bearing on the Board's or the committees' decisions but instead, she points only to the results, i.e., that two males were hired. The evidence to the contrary, i.e., the affidavits and deposition testimony, remains unrebutted. (doc. 25-1, Ex. A, Obasohan deposition, p. 30; doc. 25-3, Ex. C, Jackson Affidavit at ¶11; doc. 25-4, Ex. D, Kish Affidavit at ¶ 11; doc. 25-5, Ex. E, Williams Affidavit at ¶9, 12; doc. 25-6, Ex. F, Chappelle Affidavit at ¶9, 12; doc. 25-7, Ex. G, Reddick Affidavit at ¶9). In sum, Chestnut's circumstantial evidence is not sufficient to "support an inference that [the Board] based its employment decision on an illegal criterion." Alphin v. Sears, Roebuck and Co., 940 F.2d 1497, 1500 (11th Cir. 1991) (citation omitted).

IV.   Conclusion

Accordingly, upon consideration of the evidence and for the reasons set forth herein, the Court finds that there is no genuine issue of material fact and defendants Austin N. Obasohan and the Selma City School Board are entitled to judgment as a matter of law. Accordingly, defendants' motion for summary judgment is GRANTED.

Judgment shall be entered by separate document as provided in Rule 58 of the Federal Rules of Civil Procedure.

**DONE** and **ORDERED** this 13th day of January, 2011.

>                    s / Kristi K. DuBose
>                    **KRISTI K. DuBOSE**
>                    **UNITED STATES DISTRICT JUDGE**